1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALMOG MEIR JAN,

             Plaintiff,

  v.

PEOPLE MEDIA PROJECT ET AL,

             Defendant.

Case No. 3:24-cv-05553-TMC

ORDER GRANTING MOTION TO STAY DISCOVERY

       This case arises from the kidnapping of Plaintiff Almog Meir Jan, an Israeli citizen, by Hamas operatives during the terrorist attack on October 7, 2023. Jan alleges that People Media Project, its individual officers Ramzy Baroud and John Harvey, and unnamed Doe Defendants 1 through 10 are liable under the Alien Tort Statute, 28 U.S.C. § 1350, for aiding and abetting Jan's kidnapping and imprisonment, and for aiding and abetting terrorism in violation of the Law of Nations. *See generally* Dkt. 1.

       Defendant People Media Project and individual Defendants Baroud and Harvey have moved to dismiss the claims against them (Dkt. 27). Defendants have also moved to stay discovery until the Court rules on the motion to dismiss (Dkt. 34). For the reasons explained below, the motion to stay discovery (Dkt. 34) is GRANTED.

ORDER GRANTING MOTION TO STAY DISCOVERY - 1

## I. BACKGROUND

Jan filed this lawsuit on July 9, 2024. Dkt. 1. In his complaint, Jan alleges he was kidnapped from the Nova Music Festival and held hostage in Gaza by Hamas operative Abdallah Aljamal. *Id.* ¶¶ 46–48. Jan was held hostage for 246 days before being rescued on June 8, 2024 by the Israel Defense Forces. *Id.* ¶ 58. Jan asserts that, since May 2019, Defendant People Media Project, doing business as the Palestine Chronicle, employed Aljamal as a journalist and published Aljamal's articles supporting Hamas. *Id.* ¶¶ 10, 32, 50–55. Jan also alleges that Defendants Baroud and Harvey, as Governors of the Palestine Chronicle, "aligned the Palestine Chronicle's mission and content with Hamas" and "disseminated Hamas propaganda to the Palestine Chronicle's readers in the United States." *Id.* ¶¶ 29–30.

Jan raises two claims under the Alien Tort Statute (ATS), 28 U.S.C. § 1350. *Id.* at 16–18. First, Jan alleges that, by compensating Aljamal as an employee and providing a platform to publish his articles, "Defendants aided and abetted Hamas Operative Aljamal in cooperating in the kidnapping of Plaintiff and imprisoning Plaintiff as a hostage[.]" *Id.* ¶ 76. Second, Jan alleges that, in doing so, "Defendants materially supported Hamas, a designated foreign terrorist organization, in violation of international law." *Id.* ¶ 89.

On September 12, 2024, Defendants filed a motion to dismiss, Dkt. 27, and Jan responded. Dkt. 33. Defendants then moved for a stay of discovery until the Court rules on the motion to dismiss. Dkt. 34.

## II. LEGAL STANDARD

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (collecting cases). As part of that authority, district courts have "wide discretion in

controlling discovery," including by staying discovery when warranted. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

As other courts in this district have recognized, "[t]he Ninth Circuit does not appear to have set forth any rules or standards governing such stays of discovery." *Hold Security LLC v. Microsoft Corp.*, No. 2:23-cv-899-MJP, 2023 WL 7920434, at *1 (Nov. 16, 2023). The "mere existence of a dispositive motion does not warrant a stay of discovery." *Id.* Rather courts often "examine the nature of the pending Rule 12(b) motion" to determine if a stay is appropriate. *Id.* In doing so, courts may look to several factors to guide their exercise of discretion, such as "(1) whether the pending motion could dispose of the entire case; (2) whether the motion could be decided without additional discovery; (3) the possible damage which may result from the granting of a stay; (4) the hardship or inequity which a party may suffer in being required to go forward;" and (5) how a stay might simplify or complicate the issues, proof, and questions of law in the case. *Subspace Omega, LLC v. Amazon Web Servs., Inc.*, No. 2:23-cv-01772-TL, 2024 WL 4451404, at *1 (W.D. Wash. Oct. 9, 2024) (cleaned up); *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

### III.    DISCUSSION

Here these factors weigh in favor of a stay. In their motion to dismiss, Defendants raise several issues that could potentially dispose of the entire case. At this stage, the Court does not comment on the merits of Defendants' arguments; this case raises important questions about the scope of the ATS and its application to indisputably horrific events, and those questions must be considered fully when ruling on the motion to dismiss itself. The Court recognizes only that Defendants have raised several challenges that, if successful, would lead to dismissal of the entire case. This first factor supports granting the stay. *See Subspace Omega, LLC*, 2024 WL 4451404, at *1.

First, Defendants argue that Jan has not sufficiently pled facts to overcome the presumption against extraterritoriality, a threshold bar under the ATS. Dkt. 27 at 5, 12–18; *see Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124–25 (2013) ("[T]he presumption against extraterritoriality applies to claims under the ATS . . . [a]nd even where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application.").

Second, Defendants contend that Jan does not allege facts necessary to satisfy the two-part test that governs the scope of ATS liability. Dkt. 27 at 11; *see Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004). Under the test, as laid out in *Sosa*, the plaintiff must first "demonstrate that the alleged violation is 'of a norm that is specific, universal, and obligatory.'" *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 244 (2018) (quoting *Sosa*, 542 U.S. at 732). Next, the court must determine "whether allowing [a] case to proceed under the ATS is a proper exercise of judicial discretion, or instead whether caution requires the political branches to grant specific authority before [a new form of liability] can be imposed." *Id.* at 258 (citing *Sosa*, 542 U.S. at 732–33, n. 20–21). Defendants argue that Jan has not alleged that their actions amount to a violation recognized under the ATS, and that the United States' current involvement in brokering a cease-fire between Israel and Hamas cautions against the Court exercising jurisdiction over the case. Dkt. 27 at 11–13.

Third, Defendants argue that Jan did not adequately plead the requisite *actus reus* and *mens rea* to establish aiding and abetting liability under the ATS. Dkt. 27 at 19–20. "[T]he *actus reus* of aiding and abetting liability requires assistance to the principal with substantial effect on an international law violation." *Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 724 (9th Cir. 2023) (citing cases). Defendants maintain that Jan's "allegations are centered on the Defendants' publication of articles and general editorial activities, none of which are connected to the Plaintiff's

kidnapping and detention in a direct or substantial way." Dkt. 27 at 20. The "*mens rea* standard is satisfied when a defendant acts with knowledge that the defendant's actions will assist in the commission of a crime or with awareness of a 'substantial likelihood that [the defendant's] acts would assist the commission of a crime.'" *Doe I*, 73 F.4th at 734. Defendants argue that "Plaintiff has failed to allege any facts indicating that the Defendants were aware their publications would directly facilitate terrorist activities." Dkt. 27 at 19.

At least some of these dispositive issues raise questions of law which may be decided without additional discovery. *See Hold Sec. LLC*, 2023 WL 7920434, at *1 (citing *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988)) ("[C]ourts often examine the nature of the pending Rule 12(b) motion to determine whether a stay of discovery is appropriate. For example, whether the motion involves pure questions of law that are dispositive—such as subject matter jurisdiction or immunity—rather than fact-intensive inquiries that might be resolved by further discovery."). Here, whether the presumption against extraterritorial application applies and whether Jan's claims fall within the scope of ATS liability raise "pure" legal questions. *See id.* Since additional discovery will not be necessary to decide these issues, the second factor weighs in favor of granting a stay.

Next, the possible damage that may result from granting a stay would be minimal. *See Subspace Omega, LLC¸* 2024 WL 4451404, at *1. Defendants assert that their "counsel made clear in the September 20, 2024, discovery conference, [they] have instructed [their] clients to preserve all possible evidence related to the case, including communication. Therefore, a delay in discovery will not lead to the spoliation of potential evidence." Dkt. 34 at 4. Jan argues that Defendants "seek to delay accountability," but he does not describe specific damage he will incur if the stay is granted. Dkt. 35 at 1. Absent claims of potential damage to the parties, the third factor supports a stay.

ORDER GRANTING MOTION TO STAY DISCOVERY - 5

In contrast, if discovery were to proceed, Defendants have identified specific hardship or inequity they may suffer. *See Subspace Omega, LLC*, 2024 WL 4451404, at *1. Defendants assert that "during [the discovery conference], Plaintiff's counsel made it clear that this case would involve extensive discovery, including e-discovery, and that this discovery would involve persons both within the U.S. and abroad." Dkt. 34 at 2. Defendants argue that "[they]—a small non-profit chronicle and its managers—have meager resources which will be greatly strained if they are forced to proceed with discovery, especially if that discovery is made unnecessary by the granting of the Motion to Dismiss." *Id.* at 4. Given that discovery may be extensive and costly, the Court finds the fourth factor weighs in favor of a stay. *See Bosh v. United States*, No. C19-5616-BHS, 2019 WL 5684162, at *1 (W.D. Wash. Nov. 1, 2019) ("[A] stay would advance the efficiency for the Court and the litigants by avoiding the burden of discovery costs until . . . the Motion to Dismiss is resolved.").

Finally, even if some claims survive the motion to the dismiss, the issues are more likely to be simplified than complicated, which will allow the parties to have a better understanding of the claims as they proceed to discovery. *See Subspace Omega, LLC*, 2024 WL 4451404, at *2; *see also In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417 WHA, 2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007) ("adjudicating the motions to dismiss will shed light on the best course for discovery."). The final factor also supports granting a stay.

## IV.   CONCLUSION

For the reasons explained above, Defendants' motion for a stay of discovery (Dkt. 34) is GRANTED.

Dated this 18th day of November, 2024.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING MOTION TO STAY DISCOVERY - 7