UNITED STATES DISTRICT COURT WESTERN DISTRICT

OF WASHINGTON AT TACOMA
_____

ALMOG MEIR JAN, SHLOMI ZIV, ANDREY KOZLOV
          Plaintiffs,

                                  **REPLY BRIEF**

                                  NOTING DATE
                                  APRIL 11, 2025

                                  **Case No. 3:24-CV-5553-TLF**

PEOPLE MEDIA PROJECT, a Washington Non-Profit Corporation, d/b/a PALESTINE CHRONICLE; RAMZY BAROUD; JOHN HARVEY; and DOES 1 through 10,
          Defendants.
_____

## Reply Brief in Support of Defendants' Motion to Dismiss

### I. Introduction

Plaintiffs' Response to Defendants' Motion to Dismiss (Response) attempts to reframe their defective Amended Complaint as a "compensation" case rather than a publication one, but their factual and legal theories remain deeply flawed. The allegations Defendants make about this compensation do not establish the requisite nexus to the United States, are remote from the claimed injury, untethered from any operational support of criminal conduct, and inextricably linked to Defendants' constitutionally-protected journalistic activities. In addition, Plaintiffs fail to allege that Defendants acted with the purpose or knowledge required to support aiding and abetting liability under the Alien Tort Claims Act ("ATCA" or "ATS").

### A. Executive Summary

This case seeks to impose civil liability under the ATC 28 U.S.C. § 1350, on a U.S.-based nonprofit news organization and its principals for allegedly making modest editorial payments in

1

a manner unknown to a freelance journalist in Gaza who, months later, was accused of involvement in hostage-taking by Hamas. Plaintiffs—Israeli nationals who were held hostage in Gaza—allege that these payments, which compensated the journalist for written submissions, constituted aiding and abetting war crimes and terrorism. They further claim that the journalistic relationship between Defendants and the freelancer renders Defendants secondarily liable for his alleged conduct. The Amended Complaint is legally deficient on the following, independent grounds:

1. The ATS does not apply because the Amended Complaint does not make specific allegations to show that the conduct at issue—alleged payments for articles— "touches and concerns" the United States with sufficient force to overcome the presumption against extraterritoriality. (*Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013); *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931 (2021)).

2. The Amended Complaint fails to plead specific intent or actual knowledge that Defendants intended to further any hostage-taking or terrorist conduct, which is required under Ninth Circuit precedent to establish aiding and abetting liability under the ATS. (*Doe v. Cisco Systems, Inc.*, 73 F.4th 700, 713 (9th Cir. 2023); *Jesner v. Arab Bank*, 138 S. Ct. 1386 (2018)). Plaintiffs rely on conjecture, circumstantial connections, and ideological alignment—not facts.

3. Plaintiffs cannot show that Defendants' conduct constituted substantial assistance or proximate cause of their injury. The alleged payments had no operational connection to the hostage-taking and were not directed toward, or used in furtherance of, any criminal act. (*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983); *Twitter v. Taamneh*, 598 U.S. 471 (2023)).

4. Plaintiffs' failure to allege that the claimed violations in this case were committed under color of state law, or to sufficiently plead facts to support an exception to this requirement is fatal to their ATCA claims. *Doe v. Cisco Systems, Inc.*, 73 F.4th 700, 740 (9th Cir. 2023); *Shafi v. Palestinian Authority*, 642 F.3d 1088, 1095 (2d Cir. 2011).

5. The lack of nexus between the alleged conduct of Defendants and the U.S. also justifies dismissing this case on the grounds that Plaintiffs have not attempt to exhaust their domestic remedies. *Sarei v. Rio Tinto*, 550 F.3d 822, 831 (9th Cir. 2008) (*en banc*).

6. Adjudicating Plaintiffs' claims would require the Court to assess the legitimacy of Israeli military actions, the nature of the Hamas conflict, and the political implications of war reporting—raising nonjusticiable political questions constitutionally reserved for the Executive Branch. (*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004); *Baker v. Carr*, 369 U.S. 186 (1962)).

7. Plaintiffs' claims against a news outlet for allegedly paying a freelance contributor for written content are barred by the First Amendment as they are an attempt to limit conduct that is at the core of protected expressive association. *See, Citizens United v. FEC*, 558 U.S. 310 (2010).

Finally, Plaintiffs have already amended their complaint and failed to cure these deficiencies. The core theory—that a U.S. publisher can be held liable under international law for compensating a foreign writer later accused of a crime—is constitutionally impermissible, factually unsupported, and legally unsalvageable. As such, the Complaint must be dismissed with prejudice.

## II. Argument

### A. Plaintiffs Cannot Overcome the Presumption Against Extra-Territoriality

Plaintiffs have an insurmountable problem with their Amended Complaint, and they are painfully aware of this as demonstrated by their Response. Thus, Plaintiffs cannot overcome the well-settled presumption against extra-territorial application of the Alien Tort Claims Act (ATCA or ATS). Specifically, they cannot overcome the holding of the Supreme Court in *Nestle USA, Inc. V. Doe*, 593 U.S. 628 (2021).

First of all, Plaintiffs, in light of this Court's decision to dismiss the first Complaint, have explicitly abandoned any claim that the Defendants' publication of articles by the alleged tortfeasor in this case --- Abdallah Aljamal (Aljamal) -- can support a claim of aiding and abetting liability. *See*, Response at p. 18. Instead, Plaintiffs now make it clear that the only basis for their aiding and abetting claims against Defendants is their alleged compensation of Aljamal for said articles. *Id.* Therefore, Plaintiffs, in order to overcome the presumption against extra-territorial application of the ATCA must somehow allege a connection between this compensation and the United States. Indeed, the Supreme Court specifically held this specifically in *Nestle v. Doe*, *supra.*, 593 U.S. at 634.

Thus, in *Nestle v. Doe*, the Supreme Court rejected plaintiffs' ATCA claims grounded upon alleged "conduct that they say aided and abetted forced labor – providing training, fertilizer, tools, and ***cash to overseas farms***," given that all of this conduct "occurred in the Ivory Coast." 593 U.S at 634 (emphasis added); *see also*, *Kiobel v. Royal Dutch Shell*, 569 U.S. 108, 124-125 (2013) (presumption against extra-territoriality not overcome where, *inter alia,* all of defendants' alleged actions of support to the offending military forces in Nigeria (the provision of "food, transportation, and money") took place outside the U.S.).

In *Nestle*, the Supreme Court held that the fact that defendants had a presence in the US and may have made decisions regarding the aforesaid conduct in the US, including decisions about the "cash payments", was not enough to overcome the presumption against extra-territorial application of the ATCA. 593 U.S. at 634. In the face of this holding, Plaintiffs have nonetheless failed to allege that any alleged compensation to Aljamal was made from or through the United States. And, given that it is their burden to make such an allegation to overcome the presumption against extra-territoriality, this is fatal to their case.

Knowing how profoundly deficient their Amended Complaint is in this regard, Plaintiffs falsely claim in their Response that they have made allegations about "payments to Aljamal from the United States" (Response at p. 10-11), but this is simply not true. Thus, nowhere in Plaintiffs Amended Complaint is such an allegation made, including in the Paragraphs (9, 64 and 65) in which they claim they made this allegation. *Id.*

Realizing this problem, though, Plaintiffs then engage in a convoluted argument about how it is somehow reasonable to assume that the payments were made from the U.S. because, they argue, Defendant Palestine Chronicle is a small 501(c)(3) in the U.S., and not a multinational corporation like the Defendants in *Nestle* and *Kiobel.* (Response at p. 14). First of all, it bears repeating that it is Plaintiffs here who have the burden of overcoming the presumption against extra-territoriality. Therefore, resorting to this type of argument itself demonstrates that Plaintiffs have simply failed to allege sufficient facts to survive the Motion to Dismiss. *See*, *Bell Atlantic v. Twombly*, 550 U.S. 544, 565 and fn. 10 (2007) (plaintiff's price fixing allegations not sufficient to overcome motion to dismiss where plaintiff did not allege the specific time or place where illicit agreements to fix prices were made or who was involved in making these agreements).

Moreover, Plaintiffs argument is simply not persuasive. Thus, even the behemoth multi-national Nestle was alleged to have been making "cash payments" to its laborers in the Ivory Coast (most likely because there were not ATMs and banks at hand in the cacao fields). Is it any less reasonable to assume that any alleged payments in this case were made in the same way? Of course, the answer is no, especially given Plaintiffs' claim that Defendant Baroud and Aljamal are from the same town in Gaza (Amended Complaint, Par. 37). This would mean that Baroud most likely knows others in the same town who could make such payments. And, given that Gaza's infrastructure – including banks and ATMS -- was being systematically bombed and

destroyed during the relevant time period of this case, it is more reasonable than not to assume that any alleged payments were in fact made in cash on the ground (if, of course, they could have been made at all).

This case is therefore distinguishable from *Doe v. Cisco,* 73 F.3d 700 (9th Cir. 2023), in which defendant Cisco was engaged in the active, U.S.-based development of surveillance technology with the knowledge it would be used by Chinese authorities to commit human rights violations. No such facts are alleged here. It must also be noted that Defendant Cisco's petition for certiorari, challenging, *inter alia*, the very existence of "aiding and abetting" liability under the ATCA, is currently before the Supreme Court. If this petition is granted, this basis of liability may very well disappear.

### B. Plaintiffs Fail to Allege Specific Intent or Knowledge

To sustain aiding and abetting liability under the ATS, Plaintiffs must plausibly allege that Defendants acted with knowledge that their actions would substantially assist specific international law violations, and with the purpose of facilitating those violations. *Doe v. Cisco Systems, Inc.*, 73 F.4th 700, 713 (9th Cir. 2023); *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1392 (2018)).

Plaintiffs do not allege any facts showing Defendants knew that Aljamal was involved in the October 7 hostage-taking at the time of payment. Instead, they rely on speculative assertions such as shared nationality, the use of Telegram, or ambiguous social media statements—none of which establish actual knowledge, much less purpose. Such allegations fall squarely within the realm of "naked assertions devoid of further factual enhancement" that the Supreme Court has rejected. (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007)).

6

As we argued in our Memorandum in Support of the Motion to Dismiss the Amended Complaint, a major lack of specificity in the Amended Complaint regards exactly when Aljamal allegedly held Plaintiffs, or anyone else for that matter. And Plaintiffs' only response to this argument is silence, presumably because they have no answer for it, or at least not a good one.

As we have already noted, Plaintiffs certainly make claims about who (Defendants) aided and abetted whom (Aljamal) in detaining them in custody, they do not specify – and in fact appear not to want to specify -- the time during the eight-month period between Plaintiffs' kidnapping by persons unknown and their release from captivity that Plaintiffs were supposed to be held in the custody of Aljamal and in his home, much less when Defendants were alleged to have become aware of said custody. And, if, as the Amended Complaint can be fairly read, Plaintiffs were only held by Aljamal in his home for some time on the day of his release, it is uncertain how Defendants could have the requisite knowledge that they were somehow acting in ways that aided and abetted this ephemeral conduct.

Beyond stating in a conclusory fashion that Aljamal engaged in some participation in the October 7 attacks by Hamas and the subsequent holding of persons kidnapped on that day, Plaintiffs give absolutely no detail about this alleged participation. Specifically, they do not state at all what level of participation he allegedly had in the in kidnappings of unknown persons not Plaintiffs on October 7, 2023, nor do they give any detail of specifically when he held captives in his home or who he held, beyond specifying that he held the Plaintiffs some time on the day of their release. Given this, there is no plausible claim that Defendants could have had knowledge of such nefarious participation or how they could have been aiding and abetting it.

Indeed, the most direct allegation Plaintiffs make about Defendants' claimed knowledge of Aljamal's misdeeds demonstrates the very deficiency of Plaintiffs' pleadings on this score. Thus, in Paragraph 68, Defendants state "[o]n information and belief, during that time between

7

October 7, 2023, and the rescue of Plaintiffs, Defendants were informed by Aljamal and others that Aljamal was holding Israelis hostage and participating in other activities of Hamas . . . ." As an initial matter, making allegations "on information and belief" is increasingly frowned upon by the courts, and if a plaintiff attempts to do this successfully, he/she must either plead the specific information upon which this belief is based or any plausible reasons for this belief. See, e.g., *Exergen Corp. V. Wal-Mart,* 575 F.3d 1312 (Fed. Cir. 2009); *Munro v. Lucy Activewear, Inc*. 899 F.3d 585 (8th Cir. 2018). Plaintiffs do not do so here. And again, one of the specifics Plaintiffs do not give is *when* exactly Defendants were supposed to have been told about Aljamal's activities between October 7, 2023, and Plaintiffs' rescue eight months later. This of course raises grave doubt as to whether Plaintiffs do in fact have any plausible basis for this claim. Moreover, taking the allegation at face value, Defendants could have been told just before Plaintiffs' rescue and therefore just before Aljamal was killed in this rescue. This would necessarily mean that no compensation was made to Aljamal after Defendants learned of his alleged misdeeds. Therefore, Defendants' failure to allege the specifics of this – again, most likely because they do not truly know anything about any compensation and thus the glaring "on information and belief" caveat --  dooms their Amended Complaint.

### C. Plaintiffs Fail to Allege "Substantial Assistance" or Proximate Causation

Even assuming arguendo that the requisite knowledge were plausibly pled, Plaintiffs fail to allege that Defendants' actions constituted "substantial assistance" to the hostage-taking and holding. Courts require that the Defendant's assistance be significant, direct, and integral to the commission of the underlying violation. *Doe v. Cisco*, 73 F.4th at 714; *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).

In the instant case, it is not in dispute but that any alleged payments to Aljamal were made

to support journalistic work, not Hamas operations.  Plaintiffs fail to show that any funds were used to support or prolong hostage-taking.  In addition, there are no allegations that Defendants influenced or coordinated any illegal acts.  In other words, as this Court held in its Decision to dismiss the original Complaint, "[n]owhere in Jan's complaint does he allege that Defendants gave Aljamal money for the purpose of committing terrorism or aiding Hamas."  (Dkt. 40, p. 16).  Plaintiffs have yet to allege such, and therefore, their case must be dismissed.

Finally, there is likewise no proximate causation alleged. Plaintiffs do not show that their injury flowed directly from Defendants' conduct, a requirement under *Jesner*, *Cisco*, and *Taamneh v. Twitter*.  Plaintiffs' case fails on this ground as well.

**D. Plaintiffs Do Not Allege That the Alleged Violations Were Carried Out by State Actors**

As the Ninth Circuit, relying upon *Sosa*, *supra.*, held in *Doe v. Cisco Systems, Inc.*, 73 F.4th 700, 740 (9th Cir. 2023), "certain forms of conduct violate the law of nations under the ATCA 'only when undertaken by state actors or those acting under color of law.'  We note that not all violations of international law require state action. Courts have recognized several that do not, including the prohibitions against piracy, the slave trade, and certain war crimes. . . ."   As the court continued, "[a]lthough Plaintiffs need not establish that Cisco itself acted under color of state law, they must show, for at least some of the alleged international law violations, that Cisco aided and abetted the offenses of a state actor." *Id.*

In the instant case, Plaintiffs do not allege that Hamas is a state actor, and it in fact is not because Gaza and Palestine are not recognized as States by the United Nations or by the US or Israel.  Rather, Gaza is a territory occupied by Israel.   And indeed, Plaintiffs expressly allege that Hamas "is a terrorist group" and a "Foreign Terrorist Organization" (Amended Complaint at Pars. 21, 22) -- that is, NOT a State or State actor.

While Defendants are unaware of any ATCA case which has addressed this issue as it applied specifically to Hamas,[1] there are cases dealing with this in regard to the Palestinian Liberation Organization (PLO) as well as the Palestinian Authority (PA) which governs in the occupied West Bank and which the US and Israel at least recognize as a legitimate authority there.  Indeed, the US government has at times expressed its desire to have the PA take governance of Gaza in lieu of Hamas.  *See*, "US welcomes new Palestinian Authority government following repeated calls for reform," *Times of Israel* (March 30, 2024). However, even in that instance, where at least one of the defendants was arguably a "public official" associated with the PA in the West Bank, the U.S. Court of Appeals for the Second Circuit held that the ATCA does not provide jurisdiction over a case for torture against non-state actors like the PLO and the Palestinian Authority.  *Shafi v. Palestinian Authority*, 642 F.3d 1088, 1095 (2d Cir. 2011).  The court in that case found that decision compelled, in part, by the Supreme Court's decision in *Sosa*, distinguishing other similar cases decided pre-*Sosa*. *Id.*  As the court held in *Shafi*:  "[a]pplying its cautious standard, the *Sosa* Court held that the forceful abduction of Alvarez did not constitute a tort cognizable under the statute. As the Court noted, Alvarez's approach 'would support a cause of action in federal court for any arrest, anywhere in the world, unauthorized by law of the jurisdiction in which it took place.' . . . Similarly, the proposition advanced by the appellants before us could open the doors of the federal courts to claims against non-state actors anywhere in the world alleged to have cruelly treated any alien. To recognize such a sweeping claim would hardly be consistent with the standards of caution mandated by the *Sosa* Court." *Id.* at 1094.

The court in *Shafi* also rejected the attempt of appellants to get around the state action requirement by alleging that the alleged torture they were subjected to by the PLO and the PA

10

violated international law norms, for example under the Geneva Conventions. Plaintiffs' passing and half-hearted allegation similar to this in Paragraph 96 – in which they allege that hostage-taking is a war crime under the Fourth Geneva Convention and the Rome Statute of the International Criminal Court – must also be rejected.

In *Shafi,* the court explained, while appellants argued that they were tortured in the course of an "armed conflict" within the meaning of the Geneva Conventions, they describe this alleged conflict as "as occurring in Israel, the West Bank and the Gaza Strip," and "the nature of Israeli relations with the territory wherein the alleged torture took place, are subjects of continuing dispute."[2] *Id.* at 1095. Consequently, the Court held, the international norms that appellants attempted to base their claims were simply not "sufficiently definite," as required by the Supreme Court in *Sosa*, to be actionable under the ATCA. *Id.*

Defendants contend that the very same can be said of the alleged hostage-taking claims in the instant case where Plaintiffs utterly fail in their Amended Complaint to even try to claim that the alleged violations against them were carried out in the course of any armed conflict. *See*, *e.g.*, *Estate of Ahuva Amergi v. The Palestinian Authority, The Palestinian Liberation Organization*, 611 F.3d 1350, 1358 (11th Cir. 2010) ("[t]here is virtually nothing in the Third Amended Complaint that pleads the existence of an ongoing armed conflict. The Third Amended Complaint does not explain whether the conflict was a war, how long it had gone on, who was fighting, what they were fighting for, how the conflict had evolved, or how the tort at issue fit into the larger picture. Quite simply, the Third Amended Complaint fails to establish subject matter jurisdiction under the ATS.") (citing, *Sinaltrainal v. Coca-Cola,* 578 F.3d 1252, 1258 (11th Cir. 2009) (allegations of "systematic intimidation, kidnapping, detention, torture, and murder of Colombian trade unionists at the hands of paramilitary forces" (non-State actors), not

11

actionable under ATCA as they could not be said to have taken in place in the course of the armed conflict in Colombia).

### E.  Plaintiffs Do Not Allege That They Attempted to Exhaust Their Domestic Remedies

Because Gaza is not its own separate state, but rather, an occupied territory of Israel, Plaintiffs are able and therefore should exhaust their remedies in Israel – a venue Plaintiffs would have to concede they could obtain justice in -- before attempting to bring suit in the United States.  This is so because, as we have already established, the nexus of this case with the United States is nearly non-existent.

The U.S. Court of Appeals for the Ninth Circuit, citing *Sosa*, *supra* at fn. 20, has held that "[w]here the 'nexus' to the United States is weak, courts should carefully consider the question of exhaustion, particularly — but not exclusively — with respect to claims that do not involve matters of 'universal concern.'"  *Sarei v. Rio Tinto*, 550 F.3d 822, 824 (9th Cir. 2008) (*en banc*). The *en banc* decision noted that the case before it

> "lacks the traditional bases for exercising our sovereign jurisdiction to prescribe laws, namely nationality, territory, and effects within the United States. . . . The lack of a significant U.S. `nexus' is an important consideration in evaluating whether plaintiffs should be required to exhaust their local remedies in accordance with the principle of international comity."

*Rio Tinto,* 550 F.3d at 831.

In the instant case, the nexus between Plaintiffs' claims and the United States are also weak, and for the very same reasons given by the Ninth Circuit in *Rio Tinto*.  Thus, the nationality of the Plaintiffs is Israeli, and they have no connection to the United States.  In addition, the alleged violations carried out against Plaintiffs all took place in Israel and Gaza. And finally, the effects of these alleged violations within the United States are at best negligible. Given this, this Court should require Plaintiffs to exhaust their domestic remedies in Israel before pursuing their claims here.

### F. The Political Question Doctrine Bars Review

It is still Defendants' position that, even if Plaintiffs could plead viable claims under the ATS, this case still implicates nonjusticiable political questions. Plaintiffs ask the Court to determine whether Israeli military actions were lawful, whether Hamas conduct constitutes war crimes, and whether Defendants' speech improperly undermined Israeli security efforts. These questions are committed to the Executive and Legislative branches, not the judiciary. (Baker v. Carr, 369 U.S. 186, 217 (1962); Sosa v. Alvarez-Machain, 542 U.S. 692, 727 (2004)).

### G.  The First Amendment Bars Plaintiffs' Claims

Defendants assert that even if Plaintiffs' theory were otherwise viable, the First Amendment independently bars their claim. Plaintiffs seek to impose liability on a nonprofit news organization for allegedly paying a freelance contributor for written content—conduct that is at the core of protected expressive association. *Citizens United v.* FEC, 558 U.S. 310 (2010) (financial contributions to political candidates are a form of speech which cannot be limited under the First Amendment).

As the Supreme Court recently reaffirmed in *Twitter v. Taamneh,* 598 U.S. 471 (2023), even ideological alignment or general awareness of wrongdoing is not enough. Civil liability cannot be imposed without affirmative and purposeful assistance to a specific act. Here, no such conduct is alleged, and the claim seeks to chill protected editorial judgments by conflating them with material support. Because Plaintiffs allege no coordination, no unlawful content, and no operational support, their theory violates the First Amendment and must be rejected.

### II.  Conclusion: The Amended Complaint Must be Dismissed With Prejudice

The Amended Complaint fails to state a claim under Rule 12(b)(6) and lacks subject matter jurisdiction under Rule 12(b)(1). The Court should dismiss the Amended Complaint with prejudice.

Plaintiffs have now amended their complaint in response to a motion to dismiss and still failed to state a claim. Courts routinely deny leave to amend where prior amendments fail to cure deficiencies. (*Foman v. Davis*, 371 U.S. 178, 182 (1962); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009)).  Plaintiffs' core theory is legally unviable given the bare, conclusory facts that they have so desperately been able to conjure, and it is clear that any further amendment would be both a futile exercise as well as a waste of judicial resources.

We certify that this Reply Brief contains 4,173 words, in compliance with the Civil Rules.

Dated:  April 10, 2025.

Respectfully submitted,

| | |
|---|---|
| ss/ Daniel M. Kovalik | ss/Ralph Hurwitz |
| Daniel M. Kovalik | Ralph Hurwitz |
| 112 Washington Place, #15K | P.O. Box 25642 |
| Pittsburgh, Pa. 15219 | Seattle, WA 98165 |
| (412) 335-6442 | alph@hurvitz.com |
| dkovalik@outlook.com | |