UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALMOG MEIR JAN; SHLOMI ZIV; ANDREY KOZLOV,<br><br>Plaintiffs,<br><br>v.<br><br>PEOPLE MEDIA PROJECT, a Washington Non-Profit Corporation, d/b/a PALESTINE CHRONICLE; RAMZY BAROUD; JOHN HARVEY; and DOES 1 through 10,<br><br>Defendants. | Case No. 3:24-cv-05553-TMC<br><br>ORDER GRANTING MOTION TO QUASH |

Before the Court is a motion by a third party, Zarefah Baroud ("Ms. Baroud"), to quash Plaintiffs' subpoena of Ms. Baroud and to sanction Plaintiffs' counsel. Dkt. 68. Because the subpoena seeks information beyond the scope of Federal Rule of Civil Procedure 26 and compliance would pose an undue burden, Ms. Baroud's motion to quash Plaintiffs' subpoena is GRANTED. However, Ms. Baroud's motion to sanction Plaintiffs' counsel is DENIED.

### I.   BACKGROUND[1]

Plaintiffs Jan, Ziv, and Kozlov were kidnapped from the Nova Music Festival during the terrorist attack of October 7, 2023, and held hostage in Gaza by Abdallah Aljamal ("Aljamal"), a

---

[1] The Court only recites the facts necessary to resolve the instant motion. A fuller recitation of the facts can be found in Dkt. 55 at 3–5.

ORDER GRANTING MOTION TO QUASH - 1

Hamas operative. Dkt. 41 ¶¶ 2–4, 6, 11–13. After being held for 246 days, Plaintiffs were rescued by Israel Defense Forces from Aljamal's home. *Id.*

Defendant People Media Project is a Washington based non-profit corporation doing business as the Palestine Chronicle. *Id.* ¶14–15. Defendant Ramzy Baroud ("Mr. Baroud") is the "Editor-in-Chief of the Palestine Chronicle and a Governor of People Media Project." *Id.* at ¶ 16. Plaintiffs allege Aljamal worked as a journalist for the Palestine Chronicle and Defendants knew of Aljamal's affiliation with Hamas but continued to pay him following the October 7 attacks. *Id.* ¶¶ 35–38, 42–43, 59, 62.

Plaintiffs' operative complaint contains two counts under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350. Plaintiffs allege that by paying Aljamal with knowledge that he was a Hamas operative, Defendants aided and abetted terrorism and the kidnapping and imprisoning of Plaintiffs as civilian hostages. *Id.* at 22, 24. Defendants collectively moved to dismiss the complaint, which the Court denied. Dkt. 55.

Ms. Baroud is not a party to the case but is the daughter of defendant Mr. Baroud. She received a subpoena from Plaintiffs on August 26, 2025. Dkt. 68-3. The subpoena seeks the deposition of Ms. Baroud as well as documents relating to her "relationship with [the] Palestine Chronicle, communications she had with Abdullah or [his wife] Fatima Aljamal, and [Ms. Baroud's] 2022 trip to Gaza." Dkts. 70 at 4; 68–3 at 6–8. Ms. Baroud filed the instant motion on September 9, 2025. Dkt. 68. Plaintiffs filed their opposition on September 19, 2025. Dkt. 70. Ms. Baroud filed her reply on September 24, 2025. Dkt. 72.

## II.     DISCUSSION

**A.     Motion to Quash Plaintiffs' Subpoena**

The scope of civil discovery is broad, allowing parties to obtain:

"[A]ny nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Fed. R. Civ. P. 26(b)(1). However, a court "must limit the frequency or extent of discovery otherwise allowed" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Federal Rule of Civil Procedure 45 governs discovery from non-parties by subpoena. Fed. R. Civ. P. 45(c). The scope of discovery under Rule 45 is "subject to the relevance requirements set forth in Rule 26(b)." *D.T. by & through K.T. v. NECA/IBEW Fam. Med. Care Plan* ("*D.T.*"), No. 2:17-CV-00004 (RAJ), 2019 WL 6213154, at *1 (W.D. Wash. Nov. 21, 2019). A court will quash or modify a subpoena that "require[s] disclosure of information that falls outside discovery permitted by Rule 26." *HP Tuners, LLC v. Sykes-Bonnett*, No. 3:17-CV-05760 (BHS), 2018 WL 10398219, at *1 (W.D. Wash. Nov. 28, 2018). A court will also quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." *Id.* The burden sits with the party seeking to quash the subpoena. *D.T.*, 2019 WL 6213154, at *1 (citing *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636–37 (C.D. Cal. 2005)).

Ms. Baroud makes several arguments in support of her motion to quash. First, she argues that the subpoena seeks information that is not relevant to any party's claim or defense. *See*

ORDER GRANTING MOTION TO QUASH - 3

Dkt. 68 at 3. Ms. Baroud is the 26-year-old daughter of Mr. Baroud. Dkt. 68 at 2. She has contributed articles to the Palestine Chronicle and is a writer, academic, and Palestinian activist. *Id.* at 1–2. But she attests through verification of the motion that she has had no interaction with Aljamal and has no knowledge about Aljamal's interactions with Defendants. Dkt. 68 at 2.

In response, Plaintiffs argue that because Ms. Baroud is Mr. Baroud's daughter and she was paid for "social media services" by the Palestine Chronicle, they are entitled to explore "whether she reviewed the social media profiles or postings" of "Aljamal" or conveyed information about his social media presence to her father. Dkt. 70 at 3. Additionally, Ms. Baroud traveled to Gaza in 2022 and stayed for two months to visit family in Nuseirat. *Id.* Plaintiffs want to "explore what knowledge Ms. Baroud obtained" of Aljamal and his family during her two-month trip, as Plaintiffs believe there are "close ties" between Ms. Baroud's family and the Aljamal family. *Id.* Plaintiffs' belief in these "close ties" is based on: (1) The Baroud and Aljamal families reside in the same town, Nuseirat; and (2) Aljamal's father, a physician, treated Ms. Baroud's grandmother several years ago when she had cancer. *Id.*

Ms. Baroud's second argument is that the information sought is cumulative, duplicative, and can be "obtained from some other source," specifically Defendants. Dkt. 71 at 5–6. In response, Plaintiffs argue that their subpoena is not unduly burdensome as it "includes a mere nine requests for production" that are "narrowly targeted." Dkt. 70 at 4.

Ms. Baroud's third argument is that the subpoena runs in violation of the First Amendment because it "will have an objective impact on [Ms. Baroud's] ability to continue advocating on behalf of fellow Palestinians without fear of being legally harassed." Dkt. 68 at 4 (citing *Chevron Corp. v. Donziger*, No. 13-MC-80038 (NC), 2013 WL 1402727 (N.D. Cal. Apr. 5, 2013)). In response, Plaintiffs contend that Ms. Baroud cannot make a "prima facie showing of arguable first amendment infringement." Dkt. 70 at 5.

ORDER GRANTING MOTION TO QUASH - 4

The Court finds Plaintiffs' arguments unpersuasive. Plaintiffs have not made any real showing that Ms. Baroud is likely to possess information that is relevant and proportional to any of the actual claims and defenses in this case. This case is about whether Ms. Baroud's father and his organization paid Aljamal after October 7, 2023 with knowledge that he was a Hamas operative. In their response to the motion, Plaintiffs suggest only speculation that perhaps Ms. Baroud had contact with Aljamal on social media at some unspecified time or during her trip to Gaza in 2022, perhaps she learned he was a Hamas operative, and perhaps that knowledge can somehow be imputed to her father. *See* Dkt. 70 at 3.

From that chain of inferences, Plaintiffs seek broad discovery from someone whose only material connection to this litigation is that she is related to a defendant. For example, Plaintiffs' request for production number six seeks:

> Any and all documents and communications evincing Your travel to Gaza, including but not limited to, travel arrangements, accommodations, itineraries, personal visits, professional contacts, communications with travel agencies, flight records, confirmation records, airline tickets, boarding passes, hotel reservation confirmations, credit card statements, photographs, videos, and customs documentation. In responding to this request, please be sure to provide such documents and communications relating to your 2022 trip to Gaza discussed here: https://www.aljazeera.com/opinions/2022/11/23/two-months-in-the-home-israel-has-denied-me.

Dkt. 68-3 at 9. Plaintiffs' justification for this request is that Ms. Baroud's family and Aljamal's family live in the same town and that Ms. Baroud's grandmother was treated by Aljamal's father some years ago when she had cancer. Dkt. 70 at 3. These links are simply too tenuous to show that information about Ms. Baroud's personal travel is relevant to whether her father or his online newspaper is liable for providing material support to Aljamal over a year later, let alone justify the burden on a nonparty to produce this type of extensive personal information. *See* Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 45(d)(3). Similarly, Plaintiffs' contention that documents produced in discovery show that the Palestine Chronicle "has paid Ms. Baroud for social media

services" at some point in time is not enough to show that she has information relevant to this litigation. At most, this shows that Ms. Baroud and Aljamal each had an independent connection to the Palestine Chronicle, and they each were social media users (like a large portion of the world's population). That is not enough to show that Ms. Baroud's deposition or document subpoena is likely to produce information relevant and proportional to whether the Palestine Chronicle paid Aljamal after the October 7 terrorist attacks or whether Ms. Baroud's father knew Aljamal was a Hamas operative. *See* Fed. R. Civ. P. 26(b)(1).

Additionally, Plaintiffs' subpoena seeks information that is "duplicative" and can be obtained from other sources that are more convenient. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Specifically, the requests for communications between Ms. Baroud and the Palestine Chronicle's "affiliates, directors, officers, employees, contractors, volunteers, interns, agents, or representatives" can be obtained from the Chronicle itself. *See* Dkt. 68-3 at 8–9. "The burden or expense of" the requests made in Plaintiffs' subpoena do not "outweigh[] its likely benefit." Fed. R. Civ. P. 26(b)(1).

Given the Court's findings as to Ms. Baroud's arguments concerning Rule 26, the Court declines to reach Ms. Baroud's constitutional argument. *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1089 (9th Cir. 2022) ("[C]ourts should avoid passing on questions of constitutionality unless such adjudication is unavoidable.") (internal quotations omitted).

**B.     Sanctions**

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). A court "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* Ms. Baroud asks this Court to sanction "Plaintiffs' counsel for attempting to use

ORDER GRANTING MOTION TO QUASH - 6

this Court's subpoena powers as a means to harass her and chill her First Amendment rights," Dkt. 68 at 5, for "the amount of attorney's fees expended by [her] counsel to respond to the subpoena." Dkt. 72 at 6. In response, Plaintiffs' counsel asks the Court to deny Ms. Baroud's request for sanctions because "sanctions [do] not result from normal advocacy." Dkt. 70 at 6 (citing *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 426 (9th Cir. 2012)).

"Sanctions under Rule 45(d)(1) are discretionary." *D.T.*, 2019 WL 6213154, at *4 (citing *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013)). The Court declines to impose sanctions here, as Ms. Baroud and the Plaintiffs failed to properly meet and confer before filing this motion. *See id.* ("[T]he Court will not penalize Plaintiff alone, when it is clear that the lack of cooperation amongst all the parties led to this discovery dispute."). Both Ms. Baroud and Plaintiffs point out that their attempts at resolving this dispute without judicial intervention were lacking. *See* Dkts. 68 at 3–4; 70 at 7; 72 at 2. Because the fees incurred could likely have been reduced through greater cooperation, and the Court is mindful of chilling litigation advocacy just as it is mindful of chilling speech, Ms. Baroud's request for sanctions is denied.

### III. CONCLUSION

Ms. Baroud's motion to quash Plaintiffs' subpoena (Dkt. 68) is GRANTED. However, Ms. Baroud's motion to sanction Plaintiffs' counsel (Dkt. 68) is DENIED.

Dated this 2nd day of October, 2025.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING MOTION TO QUASH - 7